UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- x
SALVATORE MANDOLA, STACI :
MANDOLA, S.M. an infant, by his Mother :
and Natural Guardian, STACI MANDOLA, :
and N.M., an infant, by his Mother and :
Natural Guardian, STACI MANDOLA, :
:
               Plaintiffs, :
:
       -against- :
:
COUNTY OF NASSAU, JEFFREY :
KUCHEK, ERIC DIER, JOSEPH BEIRNE, :
and CHRISTOPHER LEE, In their :
Individual and in their Official Capacities, :
:
              Defendants. :
------------------------------------------------------- x

**<u>OPINION AND ORDER</u>**
13-cv-3064 (DLI)(ST)

**DORA L. IRIZARRY, Chief Judge:**

Plaintiffs Salvatore Mandola, Staci Mandola, and S.M., and N.M., infants by their mother Staci Mandola[1], ("Plaintiffs"), bring this action pursuant to 42 U.S.C. §§ 1983 and 1988 against the County of Nassau, and Deputy Sheriffs Jeffrey Kuchek ("Kuchek"), Eric Dier ("Dier"), Joseph Beirne ("Beirne") and Christopher Lee ("Lee"), in both their official and individual capacities (collectively, "the Individual Defendants," and with the County of Nassau, "Defendants"). Plaintiffs contend that the Individual Defendants illegally entered and searched Plaintiff's home without a search warrant in violation of provisions of the Fourth and Fourteenth Amendments. (*See generally*, Plaintiffs' Memorandum of Law in Opposition ("Pl. Opp."), Dkt. Entry No. 25-5.) Plaintiffs further assert multiple New York State law causes of action including: (1) trespass; (2) intentional infliction of emotional distress; (3) negligent infliction of emotional distress; (4) negligent screening, hiring and retention; (5) negligent training and

---

[1] Only initials shall be used to refer to any minor children throughout this Memorandum and Order.

supervision; (6) negligence; (7) *respondeat superior* liability; and (8) violation of provisions of the New York State Constitution. (Complaint ("Compl.") at ¶¶ 69-95, Dkt. Entry No. 1.) Defendants move for summary judgment. Plaintiffs oppose and cross-move for summary judgment in their favor. For the reasons set forth below, Defendants' motion for summary judgment is granted and Plaintiffs' cross motion for summary judgment is denied.

## BACKGROUND

### I. Family History

Salvatore and Staci Mandola have been married since March 7, 2003, and have three children: S.M., Jr. (eleven years-old), N.M. (nine years old) and S. (three years old). (Plaintiffs' Rule 56.1 Statement ("Pl. 56.1 Statement"), ¶ 65, Dkt. Entry No. 25-4; Defendant's Rule 56.1 Statement ("Def. 56.1 Statement"), ¶¶ 5, 6, 8 and 10, Dkt. Entry No. 25.) Plaintiffs have resided at 2169 East 70th Street, Brooklyn, New York since 2006. (Transcript of Staci Mandola Deposition ("Staci M. Dep.") at 13:8-13, Dkt. Entry No. 25.) Although the deed to this property reflects that Staci Mandola's mother, Roberta Zahler, owns it, Staci Mandola pays the mortgage. (*Id.* at 13:14-25.) Ms. Zahler resides in the finished basement apartment of the house while Plaintiffs live on the first and second floors. (Transcript of Salvatore Mandola Deposition ("Salvatore M. Dep.") at 11:16-23, Dkt. Entry No. 25.)

Krista Selig ("Selig") is Staci Mandola's half-sister and the mother of [now] four year-old C.M.S. (Staci M. Dep. at 22:10-18; Declaration of Ralph J. Reissman[2] ("Reissman Decl."), Ex. C at ¶ 4, Dkt. Entry No. 25.) Selig has been embroiled in a custody battle with C.M.S.'s father, Joseph Sammartino ("Sammartino"), in Nassau County Family Court since July 2011.

---

[2] Ralph J. Reissman is the Deputy County Attorney for Nassau County and is representing all defendants in this matter.

(Reissman Decl., Ex. C at ¶ 5.)  For the majority of 2011, Selig was living in Roslyn, New York, which is in Nassau County.  (Tr. of Staci Mandola Dep. at 20:8-12.)

## II.    Family Court Proceedings

On or about July 27, 2011, Sammartino filed a petition for custody and visitation rights for C.M.S. in Nassau County Family Court ("Family Court").  (Def. 56.1 Statement at ¶ 35.) However, in December 2011, Selig relocated to Boca Raton, Florida where she and her son lived with her brother, John Selig.  (Staci M. Dep. at 19:20-24; 20:5-12.)  Prior to this relocation, the Family Court issued an order of protection directing Sammartino to refrain from contacting Selig at all.  (Pl. 56.1 Statement at ¶ 89.)  On three separate dates August 24, 2011, November 16, 2011 and July 10, 2012, Sammartino was arrested for violating the order of protection. (Declaration of Craig Trainor[3] ("Trainor Decl."), Ex. D, Dkt. Entry No. 25-1.)

The Family Court issued a summons on April 12, 2012, compelling Selig's appearance on May 3, 2012, for a preliminary proceeding to answer Sammartino's petition.  (Def. 56.1 Statement at ¶ 36.)  When Selig failed to appear in court on May 3, 2012, an arrest warrant issued pursuant to the New York Family Court Act § 153-a ("NYFCA § 153-a") directing the Nassau County Sheriff's Department to apprehend and produce her to the Family Court.  (*Id*. at ¶ 37.)  However, when the summons and arrest warrant were issued, Selig contends that she and her son still were residing in Florida.  (Def. 56.1 Statement, Ex. C at ¶ 16.)

On December 18, 2013, Selig, her son, and her mother moved into the basement apartment of Plaintiffs' residence.  (Staci M. Dep. at 20:2-4.)

## III.    Search of Plaintiff's Home

On July 16, 2012, Deputy Sheriff Sergeant Maureen Derner ("Sgt. Derner") of the Nassau County Sheriff's Department, Family Court Division, received a telephone call from

---

[3] Craig Trainor, of the Trainor Law Firm, P.C., is the attorney for Plaintiffs.

Sammartino informing her that Selig was "staying with her mother, Roberta Zahler" in the basement apartment of 2169 East 70th Street, Brooklyn, New York. (Def. 56.1 Statement at ¶ 38.) According to Beirne, Sammartino specifically informed Sgt. Derner that either he or someone else observed Selig enter Plaintiffs' residence and Selig currently was in the house. (Transcript of Deputy Sheriff Joseph Beirne Deposition ("Beirne Dep.") at 23:17-24:13; 29:11-17, Dkt. Entry No. 25.) Sgt. Derner then deployed the Individual Defendants to that address and instructed them to execute the arrest warrant for Selig. (*Id*. at ¶ 39.)

The Individual Defendants arrived at Plaintiffs' residence at approximately 4:00 p.m. on July 16, 2012. (Transcript of Deputy Sheriff Eric Dier Deposition ("Dier Dep.") at 67:12-24, Dkt. Entry No. 25.) Upon arrival, the Individual Defendants briefly searched the perimeter of Plaintiffs' property before knocking on the front door, consistent with their protocol. (*Id*. at 69:18-25; 70:2-4.) Dier first approached the left side of the house while Kuchek went to the rear of the house. (*Id*. at 70:4-6.) When Dier went to assess Kuchek's progress at the rear of the property, Dier observed that Kuchek was already inside the house. (*Id*. at 70:10-13.)

When Kuchek first entered the backyard, he observed two sliding glass doors leading to a kitchen, one of which was unlocked and slightly ajar. (Transcript of Deputy Sheriff Jeffrey Kuchek Deposition ("Kuchek Dep.") at 82:5-9, Dkt. Entry No. 25.) Through the glass doors, Kuchek observed a pair of flip flops and a ladle on the floor of the kitchen, a pot or pan on the stove or countertop, and a television that was on. (*Id*. at 83:12-19; 86:24-87:1.) Kuchek knocked on one of the sliding glass doors and after several minutes of waiting for an answer, Kuchek entered the house. (*Id*. at 83:23-84:19.) Kuchek testified that he entered the house because, based on the observations he made through the sliding glass doors, he believed that Selig was hiding inside. (*Id*. at 85:5-18; 87:8-20.) Kuchek further believed that he was

authorized to enter the residence without consent of the owners pursuant to the authority accorded him by the arrest warrant. (*Id.* at 90:4-8.) Upon entering the house, Kuchek walked to the front of the house, unlocked and opened the front door to let the other deputy sheriffs inside. (*Id.* at 91:2-8.) Kuchek first searched the main floor of the house and then searched the basement because the deputy sheriffs had been informed that Selig was residing in the downstairs bedroom. (*Id.* at 91:20-92:20.) However, Kuchek's search of the basement did not reveal anyone in that area. (*Id.* at 97:12-15.) Kuchek further testified that the Individual Defendants searched the main level of Plaintiffs' home because there was access between that level and the basement. (*Id.* at 96:16-21.)

Kuchek's testimony was corroborated by Dier who also testified that, once he entered the house through the sliding glass doors, he observed food in a pot on the stove along with flip flops and what appeared to be a spatula on the kitchen floor. (Dier Dep. at 70:25-71:7.) These observations also raised Dier's suspicions that someone was hiding somewhere inside the house. (*Id.* at 71:7-19.) Dier searched the main level of the residence and did not recall any of the deputy sheriffs searching the upstairs portion of Plaintiffs' home. (*Id.* at 72:11-73:11.) Beirne positioned himself in front of the house while the other deputy sheriffs searched the interior. (Beirne Dep. at 68:6-12.)

On that same, date at approximately 4:10 p.m., Plaintiffs returned to their residence after picking up their sons from summer day camp. (Def. 56.1 Statement at ¶¶ 40-42.) Upon arriving, Plaintiffs observed the Individual Defendants congregated both inside and outside of their home. (*Id.*) Both Salvatore and Staci inquired as to the legal basis for the officers' presence inside their residence and expressed indignation at the inability to enter their home due to the search being conducted. Salvatore and Staci testified that the Individual Defendants initially refused to

explain why their home was being searched.  (Salvatore M. Dep. at 27:13-18; Staci M. Dep. at 31:13-22.)  However, Beirne testified that, as he was securing the exterior of the residence, a man approached him professing to be a resident of the home and asked why the officers were there.  (Beirne Dep. at 68:13-17.)  Beirne asked the man if Selig resided at the house, and the man responded that she did not.  (*Id*. at 68:17-19.)  When a visibly upset woman approached Beirne inquiring as to why the officers were inside the home, Beirne explained to both the man and woman that they received information that Selig lived there and that they had a warrant for her arrest.  (*Id*. at 68:19-69:18.)

According to Plaintiffs, at the conclusion of the search and as the Individual Defendants were descending the exterior stairs to the front of Plaintiffs' house, they finally informed Plaintiffs that they had received a tip suggesting that Selig resided at that residence. (Staci M. Dep. at 32:5-17.)  Plaintiffs' estimated the search lasted for approximately forty-five minutes during which time they were denied access inside.  (*Id*. at 32:21-25.)  The Individual Defendants estimated that the search lasted for more than thirty minutes but less than one hour.  (Beirne Dep. at 71:10-22.)

The means of entry into Plaintiff's home is a disputed issue in this matter because, while defendant Kuchek contends that he gained access to the rear of the property through an unlocked sliding glass door that was slightly ajar, Salvatore claims the sliding glass door was closed and locked and that the front door was unlocked when he left the house.  (Kuchek Dep. at 83:1-19; Salvatore M. Dep. at 56:6-25, 57:1-13, 58:12-14.)

## IV.    Parties' Arguments

Plaintiffs contend that the Individual Defendants' actions amounted to:  (1) a deprivation of Plaintiffs' Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983; (2) action under

the color of an unconstitutional state statute, namely, the New York Family Court Act §§ 153-a(d) and (e); (3) a failure to intervene on behalf of Plaintiffs during this violation of their constitutional rights; (4) a substantive due process violation under the Fourteenth Amendment; (5) the enforcement of an unconstitutional practice sanctioned by a municipal authority; and (6) various state law violations, including, *inter alia*, trespass, intentional infliction of emotional distress, negligent training. (*See generally* Compl.) Plaintiffs request relief in the form of both compensatory and punitive damages and reasonable attorney's fees and costs. (Compl. at 16-17.)

The Individual Defendants assert that their entry into Plaintiffs' home to execute a valid arrest warrant for Selig was authorized by the New York Family Court Act § 153-a, and that their actions are protected by both absolute quasi-judicial immunity and qualified immunity doctrines. (*See generally* Defendants' Memorandum of Law in Support of Summary Judgment ("Def. Mem. of Law"), Dkt. Entry No. 25-2.) Defendants further contend that: (1) the officers' reasonable belief that Selig was residing at Plaintiffs' house rendered their entry permissible under the Fourth Amendment; (2) Plaintiffs were not seized within the meaning of the Fourth Amendment; (3) the forty-five minute delay in Plaintiffs' ability to enter their home did not constitute a sufficient deprivation of property under the Fourteenth Amendment; (4) the Individual Defendants did not have a duty to intervene in the lawful conduct of their fellow deputy sheriffs; (5) the Individual Defendants' entry into and search of Plaintiffs' residence did not rise to the level of a substantive due process violation; (6) Nassau County did not promulgate an official policy designed to deprive individuals of statutory or constitutional rights; and (7) because the federal claims fail, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims. (*Id.*)

# DISCUSSION

## I.  Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations omitted).  A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  To determine whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989)).  "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrates the absence of a genuine issue of fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (internal citation omitted). The nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *Anderson*, 477 U.S. at 256. The nonmoving party may not "rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532-33 (2d Cir. 1993) (internal citations and quotations omitted). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (quoting *Matsushita*, 475 U.S. at 587).

## II.     Section 1983 Standard

Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the U.S. Constitution or federal or state law. *Littlejohn v. City of New York*, 795 F.3d 297, 320 (2d Cir. 2015); *see also Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993); 42 U.S.C. § 1983. However, Section 1983 does not create or establish any federally protected right, but rather provides "a procedure for redress for the deprivation of rights established elsewhere." *Id.* It also provides a cause of action to those wronged by a "misuse of state power . . . made possible . . . because the

wrongdoer is clothed with the authority of state law." *United States v. Giordano*, 442 F.3d 30, 42-43 (2d Cir. 2006) (citations and internal quotations omitted). Thus, "[t]o state a claim against an individual under § 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Meyer v. William Floyd Union Free School Dist.*, 2009 WL 3327208, at *4 (E.D.N.Y. Sept. 30, 2009) (citations and internal quotations omitted); *see also Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005). A plaintiff seeking to establish municipal liability must show that the deprivation of a federal or constitutional right was attributable to the enforcement of a municipal custom or policy." *See Newton v. City of New York*, 779 F.3d 140, 156 (2d Cir. 2015); *Sorlucco v. N.Y. City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992); *see also Monell v. Dep't of Social Serv.*, 436 U.S. 658 (1978).

In the instant matter, Plaintiffs contend that the Individual Defendants deprived them of their right to be free from an illegal search and seizure in violation of the Fourth Amendment when the officers entered their residence without a search warrant. Defendants counter that they acted properly under the authority of an arrest warrant issued pursuant to NYFCA § 153-a. Plaintiffs contend that this statute is unconstitutional, a position opposed by Defendants.

## III.   New York Family Court Act

The Individual Defendants do not contest that they were acting under color of state law at all relevant times, pursuant to the authority vested in them by NYFCA § 153-a. This statute governs the execution of Family Court arrest warrants and provides in pertinent part:

> (d) In order to effect the arrest, the police officer may enter any premises in which he reasonably believes the subject named therein to be present. Before such entry, he must give, or make reasonable effort to give, notice of his authority and purpose to occupant thereof.

(e) If the officer, after giving such notice, is not admitted, he may enter such premises, and by a breaking if necessary.

N.Y. Fam. Ct. Act §§ 153-a(d) and (e).

In an issue of first impression, Plaintiffs contend that these subsections of the statute are unconstitutional because they violate the Fourth Amendment's proscription against unlawful searches. (Pl. Opp. at 13.) Plaintiffs rely on the Supreme Court's holding in *Steagald v. United States*, which prohibited the entry of law enforcement officers into the home of a third party to search for the subject of an arrest warrant absent a search warrant. 451 U.S. 204, 212 (1981); (Pl. Opp. at 15.) Plaintiffs argue that the subsections permit law enforcement officers to enter into a home without a search warrant and without distinguishing between "the residence of an arrest warrant target and the residence of a third party." (Pl. Opp. at 14.) Plaintiffs further argue that the two subsections afford homeowners only minimal protection from an illegal entry and search because the ultimate decision to enter relies upon the deputy sheriff's judicially untested determination of probable cause. (*Id.* at 14-15.) Plaintiffs point out that *Steagald* deemed such determinations insufficiently reliable to justify entering a person's home to arrest him without a search warrant. 451 U.S. at 213; (Pl. Opp. at 15.)

Plaintiffs further argue that these subsections directly contravene the Supreme Court's holding in *Payton v. New York*, in which the Court held that an arrest warrant "implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." 445 U.S. 573, 603 (1980); (Pl. Opp. at 15.) According to Plaintiffs, the legislative history of §§ 153-a(d) and (e) and the Supreme Court's decisions in *Payton* and *Steagald* and their progeny suggest that the statute at issue has been invalid as violative of the Fourth Amendment, since 1980 or 1981, when *Payton* and *Steagald* were

decided, respectively. (Pl. Opp. at 15.)  Claiming that the issue of constitutionality had been clearly established for at least thirty-four years, Plaintiffs impute knowledge of the statute's alleged unconstitutionality to the Individual Defendants prior to their entry into Plaintiffs' residence.  (*Id.* at 16.)  While the Second Circuit ordinarily imputes knowledge of case law to public officials, the courts must consider the objective information available to the officer at the time the contested action was taken.  *Amore v. Novarro*, 624 F.3d 522, 535 (2d Cir. 2010).

Beyond assertions that no tribunal has ever declared NYFCA §§ 153-a(d) and (e) unconstitutional, Defendants have not proffered a counterargument as to why those subsections should be found constitutional.  (Defendants' Reply Memorandum of Law in Support of Summary Judgment ("Def. Reply") at 9, Dkt. Entry No. 25-6.)  The constitutionality of these subsections has never been determined by any federal or New York State court.  However, for the reasons set forth below, it is not necessary for the Court to reach the issue of constitutionality in this matter.

The Second Circuit has long held that:

> absent contrary direction, state officials . . . are entitled to rely on a presumptively valid state statute . . . until and unless [the statute is] declared unconstitutional . . . The enactment of a law forecloses speculation by enforcement officers concerning [the law's] constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws.

*Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 102-03 (2d Cir. 2003) (citations and internal quotation marks omitted); *see also Vives v. City of New York*, 405 F.3d 115, 117 (2d Cir. 2004).  While it is clearly established that entry into a home without a search warrant under a statute that has been authoritatively declared unconstitutional ordinarily is a constitutional violation, no such declaration has been made with respect to NYFCA §§ 153-a(d) and (e).  Here, the Individual Defendants properly relied on the presumptive constitutionality of §§ 153-a(d) and

(e).  The Individual Defendants had an objectively reasonable basis to believe that the arrest warrant, issued pursuant to NYFCA § 153-a, granted them the authority to enter Plaintiffs' home in order to arrest Selig.  Furthermore, the language of NYFCA §§ 153-a(d) and (e) is consistent with the holding in *Payton* upon which Plaintiffs rely.  (*See generally* Pl. Opp. at 15-16, 18, 21.) *Payton* permits entry by law enforcement officers into a "dwelling in which the suspect lives when there is reason to believe that the suspect is within" under the limited authority of an arrest warrant provided that the warrant was founded on probable cause.  445 U.S. at 603.

In the instant matter, the arrest warrant was issued by the Family Court because Selig failed to appear before the court at a mandatory preliminary proceeding to answer Sammartino's petition.  (Def. 56.1 Statement, Exhibit E ("Summons") and Warrant of Arrest, Dkt. Entry No. 25.)  Pursuant to a tip from Sammartino that Selig was staying at Plaintiffs' address, the Individual Defendants had reason to believe that Selig would be at the residence.  With respect to the probable cause issue, ordinarily, an arrest warrant issued by a neutral magistrate "is presumed reasonable because such warrants may issue only upon a showing of probable cause." *Walczyk v. Rio*, 496 F.3d 139, 155-56 (2d Cir. 2007). Here, probable cause existed for the issuance of the Family Court arrest warrant.  Moreover, the Individual Defendants had reason to believe that Selig resided at Plaintiffs' address based upon the representations of the petitioner in the Family Court child custody proceeding.

Because of the statute's practical uniformity with *Payton*, it cannot be deemed facially unconstitutional.  However, by addressing the defenses of absolute quasi-judicial immunity and qualified immunity below, it is not necessary for the Court to make a categorical determination as to the constitutionality of the state statute at issue, since the alleged invalidity of the statute has never been clearly established.

## IV. The Absolute Quasi-Judicial Immunity Doctrine Protects The Individual Defendants from Lawsuit

"Certain actors associated with the courts enjoy absolute, quasi-judicial immunity from suit because such immunity is 'necessary to protect the judicial process.'" *Gross v. Rell*, 695 F.3d 211, 215 (2d Cir. 2012) (quoting *Burns v. Reed*, 500 U.S. 478, 485 (1991)). In determining whether a particular actor is entitled to protection under the quasi-judicial immunity doctrine, the courts must ensure that its decisions are "predicated upon a considered inquiry into the immunity historically accorded the relevant official at common law and interests behind it." *Id.* (internal quotation marks omitted). The burden of proof rests upon the official seeking absolute immunity to demonstrate that such immunity is justified for the function in question. *Id.*; *see also Imbler v. Pachtman*, 424 U.S. 409, 421 (1976). However, there is a presumption that "qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Gross*, 695 F.3d at 215 (internal quotation marks omitted). In determining whether absolute immunity attaches, the Second Circuit considers "'the nature of the function performed, not the identity of the actor who performed it.'" *Root v. Liston*, 444 F.3d 127, 131 (2d Cir. 2006) (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)).

Defendants request that the Court extend the doctrine of absolute quasi-judicial immunity to deputy sheriffs in the execution of a court ordered arrest warrant. (Def. Mem. of Law at 13.) Defendants contend that, because the deputy sheriffs were performing functions closely associated with the judicial process, they are entitled to absolute immunity from lawsuit. (*Id.*)

In a rather narrow construction of the arrest warrant's authority, Plaintiffs argue that the Individual Defendants are not entitled to absolute quasi-judicial immunity because the Family Court did not direct them to enter Plaintiffs' home during the warrant's execution. (Pl. Opp. at

20.)  In exceeding the scope of the arrest warrant's directive, Plaintiffs' contend that the Individual Defendants no longer operated under the protection of judicial authority.  (*Id*. at 21.)

The Individual Defendants' attempted execution of the Family Court-issued arrest warrant represented both an extension of that court's authority and an attempted fulfillment of its directive.  The execution of an arrest warrant is a function considered to be an integral part of the judicial process insofar as a law enforcement official is acting pursuant to a court order.  *Dudek v. Nassau County Sheriff's Dept.*, 991 F. Supp.2d 402, 415 (E.D.N.Y. 2013); *see also Maldonado v. N.Y. Cnty. Sheriff*, 2006 WL 2588911, at *5 (S.D.N.Y. September 6, 2006).  However, the instant matter is distinguishable from *Dudek* with respect to that court's holding as to absolute quasi-judicial immunity.

In *Dudek*, the Nassau County Family Court issued an order of protection against the defendant directing the Sheriff's Department to confiscate the defendant's firearms.  *Dudek*, 991 F. Supp. 2d at 406.  Several months after the confiscation of the firearms, the petitioner in the Family Court action withdrew her petition, whereupon the court terminated the family offense proceeding and vacated the order of protection.  *Id*. at 407.  Notwithstanding the defendant's requests, the Sheriff's Department refused to return the firearms without a court order.  *Id*. at 407-08.  The defendant sued the Sheriff's Department and the individual deputy sheriffs pursuant to 42 U.S.C. § 1983 for violating his Fourteenth Amendment right of procedural due process by failing to provide a mechanism for the return of his firearms once the Family Court vacated the original order.  *Id*.  The *Dudek* court found that the Sheriff's Department and the individual officers operated in judicial silence in refusing to return the defendant's firearms once the court order was vacated.  *Dudek*, 991 F. Supp.2d at 415.  The point at which they stopped performing a judicial function was the point at which their conduct was no longer immunized.  *Id*.

Here, the arrest warrant was never vacated, but rather was active and enforceable when the Individual Defendants were deployed to Plaintiffs' residence to apprehend Selig. Plaintiffs' argument that the Individual Defendants operated beyond the judicial scope of the arrest warrant is of no moment. The arrest warrant directed the Individual Defendants to "arrest Krista Frances Selig, and bring said person before this Court to be dealt with according to law." (Def. 56.1 Statement, Exhibit F, ("Warrant of Arrest"), Dkt. Entry No. 25.) The Family Court-issued warrant did not impose any express restrictions on the Individual Defendants' execution thereof nor did it provide instructions as to the manner in which the warrant was to be executed. Plaintiffs nonetheless claim that the Individual Defendants' attempted execution of the warrant violated their Fourth Amendment rights by entering their home. For the reasons set forth below, the Court finds that the Individual Defendants' actions did not constitute a Fourth Amendment violation. Accordingly, the Individual Defendants and the County of Nassau are entitled to absolute quasi-judicial immunity and summary judgment is granted on that basis.

V. **The Qualified Immunity Doctrine Protects The Individual Defendants from Lawsuit**

The qualified immunity doctrine "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Rogoz v. City of Hartford*, 796 F.3d 236, 247 (2d Cir. 2015) (internal quotation marks omitted). The doctrine affords law enforcement officials broad latitude for mistaken judgments "by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted). It is not required that a law enforcement official's decision be correct in order to fall within the protective scope of the doctrine, it is only required that the decision be reasonable. *Id.* "[W]hen a defendant official invokes qualified immunity as a defense in order to support a motion for summary judgment, a

court must consider two questions: (1) whether the evidence, viewed in the light most favorable to the plaintiff, makes out a violation of a statutory or constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010); *see Gilles v. Repicky*, 511 F.3d 239, 243-44 (2d Cir. 2007). In order for a right to be considered clearly established, the law must (1) be defined with reasonable clarity; (2) have been affirmed by the Supreme Court or the Second Circuit; and (3) have been understood by a reasonable defendant to prohibit specific conduct. *Looney v. Black*, 702 F.3d 701, 706 (2d Cir. 2012); *see also Young v. Cnty. of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998). If it was objectively reasonable for a defendant to believe that his action did not violate the law at issue, the defendant is still entitled to qualified immunity notwithstanding the fact that his conduct did violate a clearly established law. *McGarry v. Pallito*, 687 F.3d 505, 512 (2d Cir. 2012).

Defendants contend that, because they derive their authority to enter Plaintiffs' residence from NYFCA §§ 153-a(d) and (e) which, heretofore, have not been declared unconstitutional, the qualified immunity doctrine protects them from lawsuit. (Def. Mem. of Law at 15.) Defendants further assert that, notwithstanding any perceived conflict between the state statute and the holding in *Steagald*, "officers of reasonable competence could disagree that § 153-a" is unconstitutional. (*Id*. at 16.)

Plaintiffs contend that the entry into their home without a search warrant, consent, exigent circumstances, or a reasonable belief that Selig resided there constituted a clearly established Fourth Amendment violation and Defendants are not entitled to qualified immunity. (Pl. Opp. at 16.) Plaintiffs specifically rely upon the Supreme Court's holdings in *Payton* and *Steagald* to support their contentions that law enforcement may not conduct a warrantless search

into a suspect's home to effect an arrest nor may they enter the home of a third party to search for the subject of an arrest warrant absent a search warrant. (*Id*. at 5.)

### A. Fourth Amendment Analysis

#### 1) The Individual Defendants' Entry into Plaintiffs' Home Did Not Violate Their Fourth Amendment Rights

Applying the two-part inquiry to the present matter, the Court first must determine whether the Individual Defendants' entry into Plaintiffs' residence to execute a valid arrest warrant on a third party violated a statutory or constitutional right. As a general matter, the police do not need a search warrant to enter a suspect's home when they have an arrest warrant for that suspect. *United States v. Lauter*, 57 F.3d 212, 214 (2d Cir. 1995); *see Payton*, 445 U.S. at 603 ("an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within"). *Lauter* allows an officer armed only with an arrest warrant to enter a suspect's home, or what he has reason to believe is his home, in order to execute that warrant where a reasonable belief exists that the suspect is present. 57 F.3d at 214.

Here, the Individual Defendants had reason to believe that Plaintiffs' residence also was Selig's home, based upon Sammartino's statement to Sgt. Derner that Selig was "staying with her mother, Roberta Zahler" in the basement apartment of Plaintiffs' residence. (Def. 56.1 Statement at ¶ 38.) The Second Circuit has determined that the colloquial use of the term "staying with" reasonably can be interpreted to mean that the subject of the arrest warrant was residing with the third-party owner of the property. *United States v. Lovelock*, 170 F.3d 339, 344-45 (2d Cir. 1999). Indeed, "if a suspect has been living in a particular dwelling for any significant period, say a few days, it can certainly be considered his home for Fourth Amendment purposes, even if the premises are owned by a third party and others are living there,

and even if the suspect concurrently maintains a residence elsewhere as well." *Steagald*, 451 U.S. at 230-31.

In the instant matter, the Individual Defendants appropriately relied upon the information relayed to them by Sgt. Derner. As the father of Selig's child and the petitioner in the Family Court child custody proceeding, Sammartino had a vested interest in having the arrest warrant executed promptly. As such, it is reasonable to assume that he would provide the most accurate information he had as to Selig's whereabouts. Moreover, it is not required that the Individual Defendants' belief that Selig was present inside the Plaintiff's home be correct, only that it be reasonable. *Lovelock*, 170 F.3d at 343-44. Given that "the touchstone of the Fourth Amendment is reasonableness[,]" the Individual Defendants' entry of Plaintiffs' home pursuant to an arrest warrant is deemed constitutionally permissible conduct. *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). Therefore, the instant matter is distinguishable from the Supreme Court's holding in *Steagald*.

Because there was no constitutional or statutory right violated, the Court finds that the Individual Defendants are entitled to qualified immunity for their actions here. *Southerland v. City of New York*, 681 F.3d 122, 125 (2d Cir. 2012). As such, Plaintiffs' claim that the Individual Defendants' actions deprived them of their Fourth Amendment rights is dismissed.

### 2) Plaintiffs Were Not Seized by The Individual Defendants Under the Fourth Amendment

The concept of seizure under the Fourth Amendment's proscriptions has been defined by the Supreme Court to mean that, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). The Supreme Court further provided examples of circumstances which may constitute a seizure under the Fourth Amendment, including "the

threatening presence of a several officers, the display of a weapon by an officer, some physical touching of the person of the citizen or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id*. However, the absence of such evidence, as a matter of law, nullifies any claim that otherwise inoffensive conduct between a civilian and a law enforcement official constitutes a seizure of that person. *Id*. at 555. Similarly, "[a] person can be seized within the meaning of the Fourth Amendment without being physically restrained where 'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *United States v. Gori*, 230 F.3d 44, 49 (2d Cir. 2000) (quoting *Mendenhall*, 446 U.S. at 554). However, to be regarded as seized under the Fourth Amendment, an individual must do more than simply comply with a law enforcement directive to halt, he must submit to police authority, for there is no seizure without actual submission. *United States v. Baldwin*, 496 F.3d 215, 218 (2d Cir. 2007).

In the present matter, Plaintiffs were not seized under the definition of seizure as articulated in *Mendenhall*. The Individual Defendants' presence both inside and outside Plaintiffs' home reasonably could not be deemed threatening because, notwithstanding Plaintiffs' inability to enter their home, there was no unnecessary restriction imposed upon Plaintiffs' movements. (Staci M. Dep. at 35:13-19.) Plaintiffs admit that they were free to leave the premises at all times and never were detained by the Individual Defendants. (*Id*.) Similarly, Plaintiffs did not submit to law enforcement authority as required for seizure under the Fourth Amendment because the Individual Defendants did not issue a directive requiring such a submission. Plaintiffs were free, at all times to move anywhere except inside their home during the attempted execution of the arrest warrant.

Furthermore, there is no evidence that the Individual Defendants displayed their weapons to Plaintiffs. As noted above, Plaintiffs admit that the Individual Defendants never touched them. (Salvatore M. Dep. at 34:24-25, 35:1-8; Staci M. Dep. at 34:15-25, 35:2-6.) The fact that Plaintiffs considered the Individual Defendants' responses to their inquiries to be laconic and rude does not elevate their actions to a seizure of Plaintiffs. Therefore, Plaintiffs' claim that the Individual Defendants seized them in violation of the Fourth Amendment is dismissed on summary judgment grounds.

### B. Fourteenth Amendment Analysis

The Fourteenth Amendment provides in pertinent part that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. This clause has been interpreted as a "protection of the individual against arbitrary action of government." *Lombardi v. Whitman*, 485 F.3d 73, 78 (2d Cir. 2007) (internal quotation marks omitted). The substantive due process component of the clause guards the individual against "the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Id.* at 79 (internal quotation marks omitted). "The Due Process Clause, however, does not transform every tort committed by a state actor into a constitutional violation." *Id.* (internal quotation marks omitted).

"To prevail when challenging executive action that infringes a protected right, a plaintiff must show not just that the action was literally arbitrary, but that it was arbitrary in the constitutional sense." *O'Connor v. Pierson*, 426 F.3d 187, 203 (2d Cir. 2005) (internal quotation marks omitted). The Second Circuit has held that, in order to sustain a substantive due process claim against the state, it is insufficient to argue that the state's conduct was merely irrational. *Id.* "[O]nly the most egregious official conduct, conduct that shocks the conscience, will subject

the government to liability for a substantive due process violation based on executive action."
*Id*. (internal quotation marks omitted). In determining whether executive action shocks the conscience, the courts must evaluate the state of mind of the government actor and the context in which the action was taken. *Id*. Neither Supreme Court nor Second Circuit precedent has provided categorical guidance as to what type of state action does or does not shock the contemporary conscience. *Matican v. City of New York*, 524 F.3d 151, 158 (2d Cir. 2008). However, the Supreme Court has found that negligently inflicted harm falls beneath the threshold of constitutional due process, whereas the intentional infliction of injury is the conduct most likely to rise to the conscience-shocking level necessary to sustain a claim of a substantive due process violation. *Id*.

The Individual Defendants' conduct does not fall between these two standards because Plaintiffs were not injured. The objective of the Individual Defendants was to locate and apprehend the subject of a Family Court arrest warrant. The Individual Defendants entered Plaintiffs' home to accomplish that objective and in accordance with the statutory language of the NYFCA §§ 153-a(d) and (e). The question remains whether the forty-five minute delay in Plaintiffs gaining access to their home constitutes a conscience-shocking overreach of governmental power.

In *Baker v. McCollan*, the plaintiff was arrested pursuant to a valid warrant actually intended for his brother. 443 U.S. 137, 143 (1979). The plaintiff remained incarcerated for eight days, notwithstanding protests of innocence and the availability of exculpatory evidence, until the police compared his photograph to that of the wanted man and released him. *Id*. at 141. The Supreme Court ultimately held that, despite plaintiff's deprivation of liberty for a period of days pursuant to a constitutionally valid warrant, there was no constitutional violation under all the

circumstances. 443 U.S. at 137. Similarly, the plaintiff in *Russo v. City of Bridgeport* was arrested and detained for two hundred and seventeen days because he mistakenly was identified as the perpetrator of an armed robbery of a gas station and convenience store. 479 F.3d 196 (2d Cir. 2007). The *Russo* court found that the conduct of two of the four law enforcement officials violated the plaintiff's Fourth Amendment right to be free from prolonged detention when readily available exculpatory evidence existed. *Id.*

Here, Plaintiffs were not detained, but rather were deprived of entry into their home for forty-five minutes while the Individual Defendants searched for Selig. This procedural safeguard employed by the Individual Defendants to ensure that the search for the subject of a valid arrest warrant proceeded unobstructed does not suggest a gross abuse of governmental authority. Requiring Plaintiffs to remain outside their home for forty-five minutes while officers conduct a search for Selig, whom they had reason to believe was staying there, hardly constitutes conscience-shocking conduct. Furthermore, "substantive due process does not entitle federal courts to examine every alleged violation of state law, especially ones that, while perhaps vexatious, are more routine than egregious." *Kuck v. Danaher*, 600 F.3d 159, 167 (2d Cir. 2010). In the instant matter, the Individual Defendants' actions comported with the statutory language of the NYFCA §§ 153-a(d) and (e) insofar as the officers entered a premises in which they reasonably believed the subject of an arrest warrant to be present. Because this state action did not occur under circumstances exhibiting an arbitrary and outrageous abuse of power, Plaintiffs' substantive due process claim fails. *Id.*; *see Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir. 1999.)

Furthermore, the delay was necessary in order for the Individual Defendants to ensure that the subject of the arrest warrant had not secreted herself somewhere inside Plaintiffs' home.

Granting Plaintiffs' access inside the residence while the Individual Defendants conducted a lawful search thereof reasonably could have been viewed as interfering with that aim, as well as insuring the safety of both the Plaintiff and Individual Defendants. The Nassau County Sheriff's Department and the Family Court had a substantial state interest in executing a valid arrest warrant to promote the best interests of a child. This competing interest eclipses Plaintiffs' interest in obtaining immediate access to their house. For these reasons, Plaintiffs' substantive due process claim is dismissed on summary judgment grounds.

## VI. Plaintiffs' Failure to Intervene Claim is Moot

Plaintiffs contend that the Individual Defendants had an affirmative duty to intervene on Plaintiffs' behalf while their fellow deputy sheriffs were conducting an unconstitutional search of Plaintiffs' home. (Pl. Opp. at 22.) Plaintiffs further argue that the Individual Defendants' violation of Plaintiffs' constitutional rights did not absolve them of their obligation to intervene to prevent such transgressions. (*Id.*) The Individual Defendants maintain that, due to the absence of any constitutional violation, no duty was imposed on any of the deputy sheriffs to intervene to prevent the attempted execution of a valid arrest warrant. (Def. Mem. of Law at 20.)

It is well established that law enforcement officers carry with them an affirmative duty of intervention to protect against the infringement of constitutional rights from conduct committed by other officers in their presence. *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014); *see also Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994); *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988). In the instant matter, as noted above, Plaintiffs' constitutional rights were not infringed. The Individual Defendants acted within the statutory contours set forth in the NYFCA §§ 153-a(d) and (e) and lawfully entered Plaintiffs' residence in search of Selig. Therefore, the Individual Defendants

were not obligated to intervene in the lawful search conducted by their fellow deputy sheriffs. Accordingly, Plaintiffs' failure to intervene claim is dismissed on summary judgment grounds.

## VII. Plaintiffs' Claim for Municipal Liability Fails

Under the *Monell* standards, "a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see Monell v. Department of Social Services*, 436 U.S. 658 (1978). In the absence of such a custom, policy, or usage, a municipality cannot be held liable under the doctrine of *respondeat superior* for the tort of its employee. *Jones*, 691 F.3d at 80. "A plaintiff alleging that she has been injured by the actions of a low-level municipal employee can establish municipal liability by showing that a policymaking official ordered or ratified the employee's actions—either expressly or tacitly." *Id*. at 81. The operative inquiry in determining the applicability of municipal liability is whether the facts demonstrate that the policymaker's inaction was the result of a conscious choice and not mere negligence. *Cash v. County of Erie*, 654 F.3d 324, 334 (2d Cir. 2011).

Plaintiffs contend that, because §§ 153-a(d) and (e) were rendered facially unconstitutional in violation of the Fourth Amendment by *Payton* and *Steagald*, the County of Nassau's continued reliance on the statute constitutes an official endorsement of an unconstitutional policy. (Pl. Opp. at 23-24.) Plaintiffs' further argue that, because the County of Nassau has failed to "properly recruit, screen, train, discipline, promote, compensate, and supervise its deputy sheriffs," it has demonstrated deliberate indifference to their unconstitutional conduct. (Compl. at ¶¶ 55-62.) Defendants argue that Plaintiffs have failed to provide any evidence that an official policy was instituted or that the Individual Defendants committed a constitutional violation. (Def. Mem. of Law at 25.)

Under the failure to train theory, the Supreme Court has held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *see also Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007). "Only where a municipality's failure to train its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants can such a shortcoming be properly thought of as a city policy or custom that is actionable under § 1983." *Harris*, 489 U.S. at 388 (internal quotation marks omitted).

The Second Circuit has identified three requirements before a municipality's failure to train or supervise may be deemed to constitute deliberate indifference in which the plaintiff must show that: (1) a policymaker knows to a moral certainty that her employees will confront a given situation; (2) the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and (3) the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights. *Jenkins*, 478 F.3d at 94. Furthermore, "at the summary judgment stage, plaintiffs must 'identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation.'" *Green v. City of New York*, 465 F.3d 65, 81 (2d Cir. 2006) (quoting *Amnesty Am. V. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004)).

Plaintiffs' principal contention seems to be that the County of Nassau failed to instruct its deputy sheriffs that the NYFCA §§ 153-a(d) and (e) were unconstitutional and should not be relied upon in the execution of arrest warrants. (Pl. Opp. at 23-24.) As discussed *supra*, these statutes are constitutional. Therefore, the training the Individual Defendants received in

preparation for their work as deputy sheriffs was consistent with prevailing law. Thus, Plaintiffs have not presented any evidence sufficient to raise a genuine issue of material fact as to whether the County of Nassau failed to train or supervise its employees in arrest warrant execution procedures in deliberate indifference to Plaintiffs' rights. The Court need not inquire further into the claim of municipal liability as it has been rendered moot by the constitutionality of the Individual Defendants' conduct. Accordingly, Plaintiffs' municipal liability claim is dismissed.

## VIII. The Court Declines to Exercise Supplemental Jurisdiction Over State Law Claims

Plaintiffs raised eight supplemental state law causes of action, including (1) trespass; (2) intentional infliction of emotional distress; (3) negligent infliction of emotional distress; (4) negligent screening, hiring and retention; (5) negligent training and supervision; (6) negligence; (7) *respondeat superior* liability; and (8) violation of the New York State Constitution, Article 1, § 12. (Compl. at ¶¶ 69-95.)

A federal court may decline to exercise supplemental jurisdiction over a state law claim, provided that, *inter alia*, the claim raises a novel or complex issue of State law, or the district court has dismissed all claims over which it has original jurisdiction. *Kroshnyi v. U.S. Pack Courier Services, Inc.*, 771 F.3d 93, 102 (2d Cir. 2014) (citing 28 U.S.C. § 1367(c)). In the case at bar, the Court has dismissed all claims over which it has original jurisdiction. Therefore, Court declines to exercise supplemental jurisdiction over the remaining state law claims.

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is granted, and this action is dismissed.

SO ORDERED.

Dated:  Brooklyn, New York
       September 30, 2016

_____
/s/
DORA L. IRIZARRY
Chief Judge
